Roger N. SOBANIA, Respondent,

v.

INTEGRITY MUTUAL INSURANCE COMPANY, et al., petitioners, Appellants.

No. CX–83–1977.

Supreme Court of Minnesota.

July 19, 1985.

Rehearing Denied Sept. 9, 1985.

Kay Nord Hunt, Minneapolis, for appellants.

Dale E. Mossey, St. Cloud, for respondent.

AMDAHL, Chief Justice.

We must decide whether a policy exclusion which precludes underinsured motorist coverage for an insured's injuries arising from a vehicle owned by the insured but not insured under the insurance policy is enforceable when the policy was issued and the accident occurred after the repeal of the provision of the No-Fault Act which required the insurer to offer the insured underinsured motorist coverage. The trial court granted summary judgment declaring respondent Sobania eligible for underinsured motorist benefits. The Minnesota Court of Appeals affirmed the trial court. *Sobania v. Integrity Mutual Ins. Co.*, 349 N.W.2d 345 (Minn.App.1984). We granted review, 361 N.W.2d 29, and now affirm.

On July 18, 1982, Roger Sobania was driving a motorcycle, which he owned, when it was involved in a collision with an automobile owned and operated by Larry Kostreba. The accident occurred in rural Stearns County, Minnesota. Sobania claims that Kostreba's negligence caused the accident and that he was severely injured, but the parties stipulate that resolution of these claims is not necessary for purposes of this action.

At the time of the accident, Kostreba maintained a policy of insurance with American Family Insurance Company (American Family). That policy had liability limits of $25,000 per person and $50,000 per occurrence. Sobania has received and accepted $25,000 from American Family and has signed a general release to American Family with the consent of Grinnell Mutual Reinsurance Company (Grinnell) and Integrity Mutual Insurance Company (Integrity).

At the time of the accident, Sobania had a policy of liability insurance on his motorcycle which did not provide underinsured motorist benefits. Sobania did own, however, a 1972 Chevrolet truck, which was insured by Integrity Mutual Insurance Company. The Integrity policy provided underinsured motorist coverage of $25,000 per person and $50,000 per occurrence. Sobania also owned a 1982 Ford Mustang car, which was insured by Grinnell. The Grinnell policy also provided underinsured motorist coverage of $25,000 per person and $50,000 per occurrence.

Both the Grinnell and Integrity policies contained exclusions from underinsured motorist coverage. The Grinnell policy provided that:

This coverage does not apply to bodily injury sustained by any person:

1. While occupying a motor vehicle owned by you or a relative for which insurance is not afforded under this endorsement, or through being struck by the motor vehicle.

The Integrity policy provided that:

We do not provide Underinsured Motorists Coverage for bodily injury sustained by any person:

1. While occupying or when struck by, any motor vehicle or trailer of any type owned by you or any family member which is not insured for this coverage under this policy.

Sobania's motorcycle was not insured for underinsured motorist coverage by reference or definition in either the Grinnell or Integrity policies.

Sobania sought the determination of the district court that he is eligible for underinsured benefits under the policies on the ground that the exclusionary language contravenes Minnesota law and is therefore of no effect. The district court granted summary judgment in Sobania's favor. Grinnell and Integrity appealed the trial court's ruling to the court of appeals. During the pendency of that appeal, Integrity settled with Sobania and was dismissed from the case. The court of appeals affirmed the judgment of the trial court.

In *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77 (Minn.1982), this court voided a policy exclusion which precluded underinsured motorist coverage for an insured's injuries arising from an accident in a vehicle owned by the insured but not insured under the insurance policy. The parties agree that *Sarvela*, if applicable, would preclude enforcement of the exclusion clauses at issue, and permit "stacking" of the underinsured motorist benefits as sought by respondent. Appellant, however, argues that *Sarvela* is no longer dispositive because the statute upon which it was based has been repealed. The issue, therefore, is whether the repeal of Minn. Stat. § 65B.49, subd. 6(e) (1978), requiring that insurers offer insureds underinsured motorist coverage, permits an insurer to prohibit stacking of underinsured benefits.

In *Sarvela*, the insured was riding her motorcycle at the time of the accident. She collected the liability limit on the policy insuring the automobile that struck her, as well as her motorcycle's underinsured coverage. Because she suffered damages in excess of her recovery from these sources, Sarvela sought to recover underinsured benefits from a policy insuring an automobile she owned. The trial court ruled that underinsured motorist coverage is optional, unlike uninsured motorist and basic economic loss coverage, both of which are mandatory, and therefore concluded that the legislative policy favoring underinsured motorist coverage was insufficient to void the policy exclusion. *Sarvela*, at 78.

This court disagreed:

American Motorist contends the trial court was correct because this court has voided policy exclusions only when the coverages were mandatory. This is an incorrect characterization of the law. The original uninsured motorist statute required coverage unless the insured decided in writing that he did not desire the coverage. It was an optional coverage. In cases with very similar fact patterns, this court has voided policy exclusions under the then-optional uninsured motorists statute. * * *

In *Holman*, the insurer also argued that underinsured coverage was optional and could not be stacked. The court did not find it significant that this was an optional coverage in ordering stacking.

*Sarvela*, at 79. (citations omitted) Having ruled that the optional nature of underinsured motorist coverage did not preclude stacking of benefits, the court concluded:

It is well-established that first party coverages for which an insured pays a premium follow the person, not the vehicle. Policy exclusions which attempt to prevent the coverage from following the person are inconsistent with the purposes of the Minnesota No-Fault Act.

*Id.* (footnotes omitted). (The court cited Minn.Stat. § 65B.42 (1980) for support; that statute outlines one purpose of the No-Fault Act, relief of "severe economic distress of uncompensated victims of automobile accidents within this state * * *." *Id.*)

The accident which gave rise to the *Sarvela* litigation occurred on June 9, 1978, *see Sarvela*, at 79, before the repeal of Minn.Stat. § 65B.49, subd. 6(e) (1978), which required insurers to offer underinsured motorist coverage. This mandatory offer provision was repealed effective April 12, 1980. Act of April 12, 1980, ch. 589, § 7, 1980 Minn.Laws 700. Appellants contend that the repeal renders *Sarvela* inapplicable because the present cases arose from accidents occurring after the effective date of the repeal and involve the interpretation of policies written after the effective date of the repeal.

The trial court rejected appellant's argument, ruling that the fact that underinsured motorist coverage need not be mandatorily offered did not change its character as first party coverage which follows the person, not the vehicle. The trial court found that the "underlying policy behind the uninsured motorist coverage, basic economic loss coverage and underinsured motorist coverage is too similar to permit an interpretation that the "owned-but-uninsured" exclusion is invalid when attempting to recover uninsured or economic loss

benefits, but is valid if one is seeking underinsured motorist benefits." The court of appeals agreed that repeal of the mandatory offer statute for underinsured motorist benefits did not change the nature of the coverage, and found the policy exclusions void due to the first party nature of underinsured motorist coverage:

> Underinsured motorist coverage is a first party insurance scheme. Injured motorists look to their own insurer for benefits. Such benefits cover the person, not the vehicle. * * * To preclude stacking is to make the benefits follow the vehicle, not the person. * * *
>
> * * * Stacking is, therefore, nothing more than giving the injured party the protection he has paid for.

*Sobania,* 349 N.W.2d at 347 (citations omitted).

The trial court and the court of appeals interpreted *Sarvela* correctly. *Sarvela* did not rely on the mandatory offer statute in ruling that underinsured motorist coverage could be stacked. Indeed, *Sarvela* rejected the mandatory/optional distinction as irrelevant to the stacking issue. *Sarvela* characterized as optional both coverages which are mandatorily offered and those which are not subject to a mandatory offer requirement. *Sarvela,* at 79. Although *Sarvela* was decided based upon an accident occurring before repeal of the mandatory offer statute, the court ruled that the change in underinsured motorist coverage from optional but mandatorily offered to purely optional coverage would not affect the permitted stacking of underinsured motorist benefits. *Id.*

■ We conclude that by repealing the mandatory offer statute the legislature did not intend to permit an insurer to prohibit stacking of underinsured motorist benefits. The repeal of the mandatory offer statute was in response to this court's decision in *Holman v. All Nation Insurance Company,* 288 N.W.2d 244 (Minn.1980). *Holman* was decided on January 11, 1980; the legislature repealed the mandatory offer statute effective April 12, 1980. In *Holman,* the court determined that when the insurer could not show that it had offered the insured those coverages listed in the mandatory offer statute, the court would read the coverages into the insurance policy as a matter of law. 288 N.W.2d at 251. The court in that case also ruled that mandatorily-offered underinsured coverage implied by law could be stacked, to the amount of the insured's damages. *Id.* Underinsured motorist coverage was therefore implied by law into Holman's policy of insurance for two insured automobiles, and Holman was permitted to stack the underinsured benefits. *Id:*

■ The repeal of the mandatory offer statute was directed at *Holman's* remedy for the failure of the insurer to comply with the mandatory offer statute, not at the court's decision to allow stacking of underinsured motorist coverage. The repeal was not aimed solely at underinsured motorist coverage; the entire mandatory offer statute was repealed. The mandatory offer statute provided that the insurer offer certain medical expense benefits, residual bodily liability coverage, and uninsured motorist coverage in addition to the mandatory amount of uninsured motorist coverage, as well as underinsured motorist coverage. Minn.Stat. § 65B.49, subd. 6 (1978). The general repeal of all mandatory offers was therefore not directed at *Holman's* stacking of underinsured motorist benefits, but at the *Holman* remedy for failure of the insurer to make the required offer of coverage: implying unoffered coverages into the policy as a matter of law even though the insured had not paid a premium for them. Because proving whether or not the mandatory offers were made when the insurance contract was entered into would be difficult, and the remedy for failure to make the offer severe, the legislature eliminated the problem by eliminating the mandatory offer statute entirely.

The rationale upon which *Sarvela* voided "antistacking" policy exclusions in underinsured motorists coverage remains applicable to the present case. *Sarvela* relied upon the first party nature of underinsured

coverage, and the fact that a premium was paid for that coverage, to void the policy exclusion which prevented the underinsured motorist benefits from following the person. Stacking has been permitted for first-party coverages because the risk to the insurer does not increase with the number of vehicles owned or policies issued. As the court recently explained in *Hilden v. Iowa National Mutual Insurance Company*, 365 N.W.2d 765 (Minn.1985) (rejecting stacking of third-party coverage benefits),

> It is, sometimes commented that basic economic loss benefits and other first party coverages such as uninsured and underinsured motorist coverages protect and follow the person, not the vehicle. The risk being insured by each policy issued to an insured party is principally the risk of injury to himself or covered members of his household. Ordinarily, an injured person looks to his own policies or those covering him as an insured for basic economic loss benefits and the benefits of other first party coverages whether or not the policies are associated with the particular vehicle involved in the accident.

*Id.* at 768 (citations omitted).

█ It is undisputed that underinsured motorist coverage is a first party coverage. *Holman* and *Sarvela* relied upon this in allowing underinsured motorist coverage to be stacked. *Holman*, at 251; *Sarvela*, at 79. Sobania paid a separate premium for the underinsured motorist coverage in his policy of insurance. The policy exclusions relied upon by appellants to preclude recovery of the underinsured benefits respondents seek are therefore void. *See Holman* at 251 ("the declared policy of this court is that first-party coverages will be stacked in order of their closeness to the risk, to the amount of damages."); *Sarvela* at 79 ("It is well-established that first-party coverages for which an insured pays a premium follow the person, not the vehicle."). *See also Van Tassel v. Horace Mann Mutual Insurance Company*, 296 Minn. 181, 187, 207 N.W.2d 348, 352 (1973) (permitting stacking of uninsured motorist benefits

when uninsured motorist coverage was mandatorily offered coverage: "But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium."); *Yeager v. Auto-Owners Insurance Company*, 335 N.W.2d 733 (Minn.1983) (refusing to permit stacking of no-fault coverages in a commercial garage liability policy because separate premiums were not paid for the coverage, but allowing stacking of underinsured coverages in the policy because separate premiums would have been charged had the coverage been included, and the coverage was implied by law into the policies under *Holman*.)

Affirmed.