Paul Gerard HOESCHEN, Respondent,

v.

SOUTH CAROLINA INSURANCE
COMPANY, Petitioner, Appellant.

No. C5–83–1918.

Supreme Court of Minnesota.

Dec. 20, 1985.

Michael J. Ford, St. Cloud, for appellant.

Robert E. Pottratz, Melrose, for respondent.

COYNE, Justice.

This appeal arises out of a judgment declaring that respondent Paul Hoeschen is entitled to recover underinsured motorist benefits up to $25,000 under a policy of automobile insurance issued by South Carolina Insurance Company (South Carolina). The court of appeals, 349 N.W.2d 833, af-

firmed the judgment of the trial court, and this court granted further review. We affirm.

Hoeschen and Kenneth Floyd High, Jr., Army sevicemen stationed at Fort Bragg, North Carolina, were on leave in Minnesota on September 5, 1982, when High's automobile left the road and overturned. Hoeschen sued High, the driver, to recover damages on account of the injuries Hoeschen sustained in the accident. High's auto liability insurer tendered its policy limits of $25,000. Claiming that his damages exceeded $50,000, Hoeschen brought this action against his own insurer, South Carolina, for underinsured motorist benefits. The insurer denied any obligation under its policy: (1) Hoeschen was not "legally entitled to recover" damages from High, a fellow serviceman insulated from liability under the doctrine of intra-military tort immunity; and (2) the High vehicle was not an "underinsured motor vehicle," as that term was defined in the South Carolina policy, because the liability limits of High's automobile insurance policy were not less than the limit of liability for Hoeschen's policy.

1. The doctrine of intra-military tort immunity developed out of an exception to the governmental liability recognized by the Federal Tort Claims Act. The exception denies military personnel the right to sue the United States government on a claim "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The United States Supreme Court further limited governmental liability in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), declaring that the government is not liable under the Act for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

The *Feres* doctrine of immunity has been invoked to bar tort actions against individual servicemen whose negligence while acting incident to service resulted in injury to another serviceman. *E.g., United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (*Feres* doctrine barred action against government alleging negligent failure to sufficiently control previously convicted serviceman after release and failure to warn that serviceman was at large) and *Bailey v. DeQuevedo*, 375 F.2d 72 (3d Cir.), *cert. denied*, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967) (medical malpractice action against physician serving in military hospital barred). *See also Brown v. United States*, 739 F.2d 362 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985) (*Feres* doctrine does not allow tort action against officers who failed to prevent or properly investigate a racial incident, but does allow an action against participants in the incident where actions of participants had no connection with military service).

The *Feres* Court, however, carefully distinguished between damage claims for injuries arising out of or in the course of an activity incident to service and claims arising out of accidents unrelated to the claimant's military status. In *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), decided one year before *Feres*, the government was held subject to liability for the negligent operation of an army truck which struck a car occupied by two brothers who were on furlough. Concluding that an action could be maintained under the Federal Tort Claims Act, the Court pointed out that it was "dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." 337 U.S. at 52, 69 S.Ct. at 920. The Supreme Court later reaffirmed *Brooks*, saying that the *Feres* decision did not disapprove of the *Brooks* case, but only distinguished it. *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) (claim allowed for injury sustained after army discharge and during treatment at Veterans Administration hospital).

We agree with the trial court and the court of appeals that the *Feres* doctrine

is inapplicable to insulate High from liability for negligent operation of his automobile. There is neither claim nor justification for claim of government negligence, and subjecting High to civil liability has no effect on military discipline. Hoeschen's injuries neither arose out of nor were in the course of activity incident to military service. As in *Brooks* we are dealing with an accident which had nothing to do with either Hoeschen's or High's army career. The accident occurred thousands of miles from their military post while both driver and passenger were on leave, wearing civilian clothes, and pursuing their personal affairs.

2. That High is subject to liability with respect to the ownership and operation of his automobile does not, however, determine Hoeschen's entitlement to underinsured motorist benefits under the insurance policy issued by South Carolina.

The basic policy does not provide a separate underinsured motorist coverage. Appended to the policy is a rider, which is entitled Underinsured Motorist Coverage and contains the following relevant amendment to Part C—Uninsured Motorist Coverage:

B. The following provision is added to the definition of **"uninsured motor vehicle"**:

5. to which, with respect to damages for bodily injury only, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is:

a. equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina; and

b. less than the limit of liability for this coverage.

The limits of liability with respect to liability coverage, uninsured and underinsured motorist coverage are all $25,000 per person and $50,000 per accident. Since the limit of the liability coverage provided by High's insurance policy was also $25,000, South Carolina contends that High's automobile is not an uninsured motor vehicle, as that term is defined in its policy and that, therefore, Hoeschen's claim falls outside the underinsured motorist coverage.

■ South Carolina argues that the insurance contract is a North Carolina contract written in conformity with the North Carolina statutory definition of an "underinsured highway vehicle," N.C.Gen.Stat. § 20–279.21(b)(4) (1979), and that refusal to enforce the plain language of the contract in accordance with North Carolina law violates the Full Faith and Credit Clause of article IV, section I, and the Due Process Clause of the 14th amendment of the United States Constitution. Both the trial court and court of appeals concluded that the coverage question required a choice of law analysis in accordance with *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829 (Minn.1979), *cert. denied sub nom. State Farm Fire & Casualty Co. v. Hime,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), and *Hague v. Allstate Insurance Co.,* 289 N.W.2d 43 (Minn.1978), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) in which this court found sufficient contacts to permit the application of Minnesota law and then examined the five choice-influencing considerations enunciated in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973). We, however, are of the view that that analysis is unnecessary to a resolution of this coverage issue because upon application of either Minnesota or North Carolina law, Hoeschen is entitled to coverage.

At the time of this accident, North Carolina law contemplated elective underinsured motorist coverage "to be used with policies affording uninsured motorist [coverage] at limits in excess of the limits prescribed by the [North Carolina] financial responsibility law * * * but not exceeding the policy limits for automobile bodily injury liability as specified in the owner's policy." N.C.Gen.Stat. § 20–279.21(b)(4) (1979). The limits for bodily injury prescribed by the North Carolina financial responsibility law were $25,000 because of injury to one person and $50,000 because of

injury to two or more persons in one accident. N.C.Gen.Stat. § 20–279.21(b)(2) and (3) (1979). Hence, it is apparent that the underinsured motorist coverage provided in Hoeschen's policy with its $25,000 per person and $50,000 for two or more persons per accident—limits which do not exceed but exactly coincide with the North Carolina financial responsibility limits—is not the underinsured coverage contemplated by the North Carolina statute. It is also apparent that, although the insurer's contention that its policy definition of underinsured motor vehicle tracks exactly with the applicable North Carolina statute may be technically correct, the import in the context of the extra-statutory coverage provided by the policy is quite different.

The North Carolina statute mandates the inclusion of uninsured motorist coverage and defines an "uninsured motor vehicle" as being a "motor vehicle as to which there is no bodily injury liability insurance * * * in at least the amounts specified in [the North Carolina financial responsibility act]," i.e., limits of $25,000 per person and $50,000 per accident. N.C.Gen.Stat. § 20–279.21(b)(3) (1979). The section authorizing the inclusion of underinsured motorist coverage provides that an "uninsured motor vehicle" shall include an "underinsured highway vehicle," which is defined as follows:

[A] highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance coverage.

N.C.Gen.Stat. § 20–279.21(b)(4) (1979).

South Carolina's underinsured motorist coverage rider incorporates this statutory definition. No doubt because the statutory definition of an uninsured motor vehicle includes not only vehicles without any insurance but also those vehicles insured to liability limits less than $25,000 per person and $50,000 per accident, the policy provides that a vehicle is underinsured only if it is insured under a policy providing liability limits of at least $25,000 per person and $50,000 per accident. It seems to us perfectly clear that although the declaration sheet of Hoeschen's policy states that it provides underinsured motorist coverage with limits of $25,000 each person and $50,000 each accident, it is impossible for any motor vehicle to fit the policy definition of an underinsured motor vehicle: a vehicle insured to liability limits equal to or greater than but less than $25,000 per person and $50,000 per accident.

An insured is entitled to the benefit of the frequently expressed rule that "liability insurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them." *Taulelle v. Allstate Insurance Co.*, 296 Minn. 247, 251, 207 N.W.2d 736, 739 (1973) (quoting *Motor Vehicle Casualty Co. v. Smith*, 247 Minn. 151, 157, 76 N.W.2d 486, 490–91 (1956)). *See also Patterson v. Adan*, 119 Minn. 308, 138 N.W. 281 (1912). Absent a statutory directive for combined uninsured and underinsured motorist coverage, we decline to so construe the contradictory provisions of the policy rider and the declaration page—which ostensibly shows the limits of a separate underinsured motorist coverage—as to totally eliminate underinsured motorist coverage from the policy, and we think it highly unlikely that North Carolina would adopt a position at variance with this fundamental principle of insurance law.[1] *E.g., Tudor v. American Employers Insurance Co.*, 121 Ga.App. 240, 173 S.E.2d 403 (1970).

Nor is Hoeschen's claim defeated by the clause which provides that the amount payable under the uninsured motorist coverage

1. North Carolina has since amended its statute dealing with underinsured motorist coverage, N.C.Gen.Stat. § 20–279.21(b)(4) (1983), and Minnesota has recently adopted legislation which mandates the inclusion of combined uninsured and underinsured motorist coverage in every policy of automobile insurance issued after September 30, 1985, and prescribes many of the terms of such coverage. *See* Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws 1st Spec. Session 1840.

(of which the underinsured motorist coverage is a part) shall be reduced by all sums paid by or on behalf of those legally responsible. North Carolina has held that such a provision may not be enforced if enforcement results in limiting recovery to an amount equal to the amount of coverage required by statute if the insured's actual damage exceeds that amount. *Turner v. Masias*, 36 N.C.App. 213, 243 S.E.2d 401 (1978). In *Sobania v. Integrity Mutual Insurance Co.*, 371 N.W.2d 197, 200 (Minn. 1985), this court reaffirmed the principle that underinsured motorist coverage may not be reduced by amounts paid by one legally liable if that would prevent the insured from being made whole. We concluded that the 1980 repeal of the mandatory offer statute, *see* Act of April 11, 1980, ch. 539, § 7, 1980 Minn. Laws 700, 702 (repealing Minn.Stat. § 65B.49, subd. 6(e)), was not intended to permit an insurer to prohibit the stacking of underinsured motorist benefits. Accordingly, we hold that the underinsured motorist coverage provided by South Carolina Insurance Company entitles its insured to benefits to the extent his damages exceed the liability coverage of the defendant, not exceeding the policy limits of the insured's policy.

Affirmed.