**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent,**

v.

**John P. LUHMAN, Appellant,**

**Paul Luhman, et al., Defendants.**

**No. C1–88–2597.**

Court of Appeals of Minnesota.

April 18, 1989.

Review Denied June 21, 1989.

James M. Mahoney and Victor E. Lund, Mahoney, Dougherty and Mahoney, Minneapolis, for respondent.

Warren V. Bigelow, Jr., Johnson, Wood, Phleger & Bigelow, Wayzata, for appellant.

Heard, considered and decided by NORTON, P.J., and FORSBERG and MULALLY *, JJ.

## OPINION

EDWARD D. MULALLY, Judge.

John Luhman appeals the trial court's summary declaratory judgment determining that he cannot receive underinsured motorist benefits from any of the three

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

insurance policies wherein Luhman's stepfather is the named insured. We affirm.

## FACTS

On December 12, 1983, John Luhman was injured when the car in which he was a passenger, a 1974 Pinto, collided with a train. The car was driven by his mother, but it was insured by his stepfather, Fran Christensen. In addition to the 1974 Pinto which was insured in his name, Christensen owned a 1975 Pinto and a 1977 Dodge van. He insured all three vehicles through respondent American Family Mutual Insurance Company (American Family).

Luhman owned a 1963 Chevrolet Impala, also insured through American Family. The policy on the Impala included underinsured motorist benefits.

For purposes of this appeal, American Family stipulated that Luhman lived with his mother and stepfather at the time of the accident, and that Luhman's mother owned the 1974 Pinto at the time of the accident.[1]

Luhman sought underinsured motorist benefits under the policy covering his own 1963 Impala, and American Family does not dispute such coverage. Luhman did not, however, seek liability coverage under the policies covering the three cars insured by his stepfather. Instead, Luhman sought underinsured motorist benefits under his stepfather's policies.

Each of Christensen's three policies provides underinsured benefits to the "insured" when the "insured" is legally entitled to recover damages but cannot recover them because the vehicle driven or owned by the liable party provides insufficient liability coverage. Luhman is an "insured" under each policy because he is a relative of Christensen. However, each policy contains the following exclusion:

Underinsured motor vehicle, however, does not mean a vehicle: * * * [o]wned by or furnished or available for the regular use of [Christensen] or a relative.

Consequently, pursuant to each policy's exclusion, none of the cars insured by Christensen was an underinsured motor vehicle.

American Family commenced this declaratory judgment action to determine its respective liabilities under Christensen's and Luhman's policies. Arguing that the exclusions effectively precluded any underinsured motorist coverage under Christensen's three policies, American Family moved for summary judgment. The trial court agreed and ordered judgment declaring that Luhman was entitled to underinsured motorist benefits under the policy covering his 1963 Impala, but not under Christensen's three policies.

Summary declaratory judgment was entered and this appeal followed. On appeal, Luhman argues that the exclusions in Christensen's policies are void as contrary to public policy and that, therefore, he is entitled to underinsured motorist benefits under all three policies.

## ISSUE

Is a pre-1985 [2] "family owned vehicle" exclusion enforceable to prevent a person from collecting underinsured motorist benefits under policies covering another family member's vehicles where the person is injured while a passenger in one of that family member's vehicles?

## ANALYSIS

Prior to the 1985 amendment, "family owned vehicle" exclusions were invalid to the extent they prevented first party (uninsured or underinsured) coverage from "following the person." *American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77, 79 (Minn.1982). *Sarvela* has since been

---

1. Although Luhman's mother and another passenger in the automobile were killed in the collision, the record on appeal is devoid of reference to any claim that may have been made against the railroad.

2. The legislature validated what had previously been invalid "family owned vehicle" exclusions.

*See* Minn. Laws ch. 168, § 9, *codified at* Minn. Stat. § 65B.48, subd. 5 (1988). However, the 1985 amendment, which applied only to policies renewed after September 30, 1985, *see AMCO Insurance Co. v. Lang*, 420 N.W.2d 895, 900 (Minn.1988), is inapplicable in this case.

followed in *Sobania v. Integrity Mutual Insurance Co.*, 371 N.W.2d 197 (Minn. 1985), *Sibbert v. State Farm Mutual Auto Insurance Co.*, 371 N.W.2d 201 (Minn. 1985), and *DeVille v. State Farm Mutual Insurance Co.*, 367 N.W.2d 574 (Minn.Ct. App.1985).

In voiding the exclusions in these cases, the courts explained that the claimant's underinsured motorist coverages, being first party coverages, were intended to follow the person (named insured) and to be available to that person no matter what vehicle the claimant was occupying when injured. *See, e.g., Sarvela*, 327 N.W.2d at 79. To the extent a policy attempted to prevent first party coverage from following the person it was invalid as inconsistent with the purposes of the Minnesota No-Fault Act as it existed prior to the 1985 amendments. *Id.* at 79 & n. 5 (purpose of Act, as explained in Minn.Stat. § 65B.42 (1980), was to "relieve severe economic distress of uncompensated victims * * * by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies").

A second line of cases, however, spawned by *Myers v. State Farm Mutual Auto Insurance Co.*, 336 N.W.2d 288 (Minn. 1983), has upheld the "family owned vehicle" exclusion under factual circumstances similar to this case. *See Petrich by Lee v. Hartford Fire Insurance Co.*, 427 N.W. 2d 244 (Minn.1988); *Linder by Linder v. State Farm Mutual Automobile Insurance Co.*, 364 N.W.2d 481 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. May 1, 1985); *Eisenschenk v. Millers' Mutual Insurance Association of Illinois*, 353 N.W. 2d 662 (Minn.Ct.App.1984). In each of the above cases the injured person was occupying or struck by a vehicle owned and insured by someone else. In each case, the issue arose when the claimant (either the injured person or a legal representative) sought uninsured or underinsured motorist benefits under the policy or policies of the person who owned the allegedly uninsured or underinsured motor vehicle. Thus, the distinction between the two lines of cases is that, under *Sarvela*, the claimant sought uninsured or underinsured benefits under his or her own policies; in the *Myers* cases, however, the claimant tried to claim these benefits under someone else's policies.

In enforcing the exclusion, the *Myers* courts distinguished *Sarvela* by explaining that, unlike in *Sarvela*, the exclusion was not operating to prevent the first party coverage from following the person. *See, e.g., Petrich*, 427 N.W.2d at 246. The courts explained that a claimant should claim first party coverage under his or her own policy and third party (liability) coverage under that of the person driving the car involved in the accident. To claim uninsured or underinsured benefits under a policy where another person is the named insured, the courts explained, would be like converting inexpensive first party coverage into expensive third party coverage without paying the additional premium. *Id.; see also Thommen v. Illinois Farmers Insurance Co.*, 437 N.W.2d 651, 654–655 (Minn.1989) (quoting *Myers*, 336 N.W.2d at 291); *Meyer v. Illinois Farmers Insurance Group*, 371 N.W.2d 535, 537 (Minn.1985); *Linder*, 364 N.W.2d at 483.

Luhman attempts to distinguish the *Myers* cases on two bases. First, Luhman points out that in most of those cases the claimant also claimed liability coverage under the owners' or drivers' policies.[3] According to Luhman, the claimants were denied first party coverages because they had already received liability coverage under the same policies. Thus, Luhman argues, the *Myers* cases stand for the proposition that a claimant cannot have a double recovery under the same policy, one for first party and another for third party benefits. Because Luhman has declined to seek liability coverage under Christensen's policies, he claims he may instead choose to receive underinsured benefits under those policies.

---

**3.** There was no liability coverage available in *Petrich* because both the vehicle and the driver (who was not the owner) carried no liability coverage. In all other cases, the liability benefits had been paid to the claimant.

■ For several reasons, this argument is not convincing. First, as to his claim to coverage under the policies covering Christensen's two non-involved vehicles, the courts in both *Petrich* and *Linder* held that no claims for first party benefits could be made on other vehicles owned by the person owning or insuring the involved vehicle. We cannot justifiably distinguish *Petrich* and *Linder* as to Christensen's two non-involved vehicles.

■ As to the policy covering the involved vehicle, the 1974 Pinto, Luhman essentially argues that he should be able to elect between the underinsured and liability coverages. We find no support in the cases for such an election.

> The supreme court explained
> [u]nderinsured motorist coverage is not an alternative to liability coverage. This is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor. It is merely "excess coverage over the liability limit that would be available when damages were uncompensated merely because the tortfeasor carried inadequate liability insurance."

*Johnson v. American Family Mutual Insurance Co.*, 426 N.W.2d 419, 422 (Minn. 1988) (quoting *Schmidt v. Clothier*, 338 N.W.2d 256, 261 (Minn.1983)). Although its facts are distinguishable from the facts here, *Johnson* amplifies the principle in *Myers* that first and third party coverages represent separate benefits for which separate premiums are paid. As this court explained in *Linder*, if the named insured wants substantial coverage where family members are injured while occupying or struck by the named insured's vehicle, it is incumbent on the named insured to purchase sufficient *liability* insurance to cover such injuries. 364 N.W.2d at 483.

■ Luhman alternatively attempts to distinguish *Myers* on the basis that his mother, not Christensen, owned the involved vehicle. We think this fact is of no significance in determining whether to enforce the "family owned vehicle" exclusion.

Whether Christensen or his wife owned the vehicle, the fact remains that Luhman is attempting to recover first party benefits from policies covering the person at fault when his appropriate remedy is to seek third party benefits from those policies.[4]

### DECISION

The "family owned vehicle" exclusions in Christensen's policies are enforceable and the trial court did not err in declaring that Luhman may not recover first party benefits under those policies.

Affirmed.

---

4. Regardless of who owned the car, Christensen or his wife, either would be deemed an "insured" for purposes of liability coverage because they are relatives.