Gary KING, Jr., Appellant,
Cross-Appellee,

v.

Evelyn A. JORDAN, Appellee,
Cross-Appellant.

Gary KING, Jr., Appellant,

v.

The ALASKA INSURANCE GUARANTY
ASSOCIATION, Appellee.

Nos. 3400, 3401 and 3673.

Supreme Court of Alaska.

Oct. 19, 1979.

William J. Donohue, Anchorage, for Gary King, Jr.

Lawrence W. Erwin, Edgar Paul Boyko & Associates, Anchorage, for Evelyn A. Jordan.

Arden E. Page Burr, Pease & Kurtz, Anchorage, for Alaska Ins. Guaranty Ass'n.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

These appeals and cross-appeal are the result of an automobile accident. Appellee Evelyn Jordan's automobile had stopped behind another stopped vehicle and was struck from the rear by a car owned and operated by appellant Gary King. Thereafter Jordan instituted a suit for personal injuries.

At the time of the accident, appellant King was insured for $15,000 by the Medallion Insurance Company. While this case awaited trial, Medallion was declared insolvent by the Commissioner of Insurance of the State of Missouri.[1] On a motion by the Alaska Division of Insurance, an order appointing a receiver for Medallion's assets in Alaska was entered by the Superior Court of Alaska.[2]

The uninsured motorist coverage of Jordan's insurance policy with State Farm Mutual Automobile Insurance Company provided for payment of claims against motorists whose insurers became insolvent. Having been notified of the insolvency of King's insurer Medallion, Jordan and State Farm negotiated a settlement of $12,500 in payment of any claims she might have under her uninsured motorist policy provisions. The settlement specifically reserved Jordan's right to maintain her suit against King and the Alaska Insurance Guaranty Association and to personally retain any recovery so obtained, State Farm waiving all subrogation rights.

As King had conceded liability, a nonjury trial was held before Judge Davis on the issue of the damages to be recovered by Jordan. In his Memorandum Opinion, Judge Davis awarded Jordan $3,886.15 as special damages, and $3,000 for pain and suffering, attorney's fees, and appropriate interest. He also ruled that this award should not be offset by the $12,500 which Jordan had recovered under the uninsured motorist provision of her insurance policy. Will all costs and interest, the judgment totalled $9,547.94.

King then petitioned the court to reconsider its decision that the judgment should not be offset by the $12,500 settlement and also requested the superior court to reconsider its award of attorney's fees to Jordan. Jordan filed a *pro se* motion for a new trial based on claims of ineffective assistance of counsel, improperly considered evidence, and the superior court's alleged abuse of discretion in other matters.

These motions were heard by Superior Court Judge Occhipinti, who inherited the case after the retirement of Judge Davis. Each motion was denied, and the amount of judgment affirmed. Judge Occhipinti vacated Judge Davis' opinion and entered a final Memorandum Opinion, restating the case and Judge Davis' findings and conclusions. It is from this judgment that King's appeal [No. 3400] and Jordan's cross-appeal [No. 3401] are taken.

Thereafter, King filed a complaint in the superior court seeking a declaratory judgment requiring the Alaska Insurance Guaranty Association to pay the judgment of $9,547.94 entered against him in favor of Jordan. As there were no factual questions in dispute, King filed a motion for summary judgment and the Association a cross-motion for summary judgment. After a hearing on these motions, Superior Court Judge Ripley entered an order granting the Association's cross-motion for summary judgment. King has also appealed that order.

---

1. Medallion was incorporated under the laws of the State of Missouri.

2. Pursuant to its statutory obligation under AS 21.80.060(a)(2), the Alaska Insurance Guaranty Association assumed the duty of the insolvent insurer Medallion to defend actions brought against its policyholders and retained counsel of its choice to defend King. By order of the superior court, this attorney was substituted for King's previous counsel on October 30, 1975, and a continuance was granted to allow new counsel to prepare for trial.

We will first address the question whether the Alaska Insurance Guaranty Association Act applies to Jordan's claim against King.[3] The Alaska Insurance Guaranty Association Act was enacted in 1970 and is based on a model act adopted by the National Association of Insurance Commissioners.[4] The Act's general purpose is:

to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of this protection among insurers.[5]

The Act applies to "all kinds of direct insurance," with certain exceptions that are of no effect here.[6] The provisions of the Act are to be "liberally construed" to effect the Act's purpose.[7]

The Association, composed of and funded by member insurers,[8] is "obligated to the extent of the covered claims existing before the determination of insolvency." This obligation goes to "covered claims" in excess of $100 and less than $300,000, but it does not extend to "an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises."[9] The Association, in short, is to "be considered the insurer to the extent of its obligation on the covered claims and to that extent has all the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent."[10]

It is apparent that King's insurer at the time of the accident, Medallion, is an "insolvent insurer" within the terms of the Act.

Thus, the issue to be resolved is whether Jordan's claim against King is a "covered claim" to which the Act applies. The term "covered claim" is defined in the Act as follows:

"[C]overed claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer after August 6, 1970, and (A) the claimant or insured is a resident of this state at the time of the insured event; or (B) the property from which the claim arises is permanently located in this state; "covered claim" does not include any amount due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . . .[11]

The Association argues that Jordan's claim is not covered because as part of the uninsured motorist policy settlement State Farm assigned its rights against the Association to Jordan. Therefore, it concludes that Jordan's claim, to the extent of the first $12,500 of her recovery, is in fact an amount due an insurer "as subrogation" and that the assignment of rights to her from State Farm is a legal nullity.

■ There is nothing in the Act that prevents a claimant from negotiating such rights as a part of a settlement agreement. The "nonduplication of recovery" provision of the Act, AS 21.80.100, protects the Association from claims where recovery has been effected by a claimant from her own

---

3. We have determined that King is not procedurally foreclosed from asserting the applicability of the provisions of the Alaska Insurance Guaranty Association Act in this case.

4. AS 21.80.010–.190. A discussion of the purposes of the Alaska Insurance Guaranty Association Act is contained in our recent opinion in *White v. The Alaska Ins. Guar. Ass'n*, 592 P.2d 367 (Alaska 1979).

5. AS 21.80.010.

6. AS 21.80.020.

7. AS 21.80.030.

8. Membership is a condition of transacting insurance business in Alaska. AS 21.80.040.

9. AS 21.80.060(1).

10. AS 21.80.060(2).

11. AS 21.80.180(4).

insurer without the necessity of nullifying legal rights so negotiated.[12]

Jordan argues that her claim is not within the purview of the Act because the Act does not contemplate full protection of an insured, but rather is concerned with payment of unpaid claims against insolvent insurers. Jordan concludes that since she has made no claim against Medallion directly the Act does not apply. The Act, Jordan argues, "is relevant only when [she] is unable to satisfy her claim against King."

The interpretation is contrary to the letter and intent of the Act. One of the stated purposes of the Act is "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer."[13] King argues that the Act applies when an insurer is determined to be insolvent, not when a claim is presented against that insolvent insurer.

█ We hold the Act to be applicable to Jordan's claim against King from the time his insurer became insolvent. The Act states, as discussed above, that the Association is to "be considered the insurer" with whatever rights and obligations the insolvent insurer had under its contract with the policyholder, subject only to certain limitations on its liablity.[14] To hold the Act inapplicable for the reasons suggested by the Association and Jordan would ignore the realities of insurance, and deny the policyholders of insolvent insurers the protection which is a stated purpose of the Act.

The Association's position would have its obligations cease entirely when a plaintiff effected any recovery against either her own or another's insurer. This would penalize for no reason a defendant holding a policy with an insolvent insurer whose victim was fortunate enough to have another source of insurance recovery.[15]

Jordan's position is even less tenable in policy, as it would provide a defendant the financial protection guaranteed by the Act only after a plaintiff has been unable to fully satisfy a judgment from the defendant's personal assets. It would permit a plaintiff to deny a defendant the benefit of his or her insurance contract, contrary to the clear purpose of the Act, by simply electing to seek recovery on a claim from the defendant personally, rather than presenting the claim to the Association.[16]

---

**12.** The "nonduplication of recovery" provision of the Act is discussed *infra. See also Arnone v. Murphy*, 153 N.J.Super. 584, 380 A.2d 734, 738 (1977) ("The provisions of the Guaranty Association Act must be interpreted to protect policyholders and claimants and to advance their interests rather than the interests of the association.").

**13.** AS 21.80.010.

**14.** AS 21.80.060 (Powers and duties of the association). *See also Tennessee Ins. Guar. Ass'n v. Pack*, 517 S.W.2d 526 (Tenn.1974) (claims "covered" though they arose before Act's effective date, since insurer declared insolvent after that date). *Accord, Louisiana Ins. Guar. Ass'n v. Guglielmo*, 276 So.2d 720 (La.App.), aff'd, 279 So.2d 690 (La.1973); *Mississippi Ins. Guar. Ass'n v. Gandy*, 289 So.2d 677, 682 (Miss.1973). ("The controlling factor is the insolvency of the insurance company after the effective date of the act and not when the claims arose.").

**15.** This would also be inconsistent with the "nonduplication of recovery" provision of the Act discussed *infra*, AS 21.80.100, which requires a claimant having a claim under an insurance policy other than the insolvent insurer's policy (as Jordan had here) to "exhaust first his right under the policy." *See also Spearman v. State Security Ins. Co.*, 57 Ill. App.3d 393, 14 Ill.Dec. 729, 372 N.E.2d 1008 (1978). The plaintiff there attempted to recover under an uninsured motorist policy, much like Jordan's, after defendant's insurer became insolvent. Her insurer refused, saying that the defendant was not uninsured due to the coverage of the Illinois Guaranty Fund (Ill.Rev.Stat. 1975, ch. 73, ¶ 755a) and that she should first file a claim against the fund. The appellate court reversed and invoked the statute to the effect that an insured "must first proceed under any rights conferred by his insurance policy." 14 Ill.Dec. at 730, 372 N.E.2d at 1009.

**16.** This would contravene one of the mandates of Alaska's statutory insurance law. AS 28.-20.440(f)(2) provides, in part:

Every motor vehicle liability policy is subject to the following provisions but these provisions need not be contained in the policy.

.    .    .    .    .

(2) The satisfaction by the insured of a judgment for injury or damages is not a condition precedent to the right or duty of the insurance carrier to make payment on account of injury or damage.

By this construction of the Act the Association would hardly be helping a policyholder "avoid financial loss" resulting from his or her insurer's insolvency.[17]

Having determined that Jordan's claim is a covered claim within the Act, we must next decide the effect of the Act's "nonduplication of recovery" provision on the Association's obligation to Jordan. This provision, AS 21.80.100, provides in pertinent part as follows:

> *Nonduplication of Recovery.* (a) A person having a claim against an insurer under a provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, is required to exhaust first his right under the policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of recovery under the insurance policy. . . .

Jordan has exhausted her rights under her own policy as required, by obtaining a settlement of $12,500 from her insurance company under her uninsured motorist policy provisions.

The Association argues that even "[a]ssuming arguendo that the claim of Evelyn A. Jordan were to qualify as a 'covered claim' under the Alaska Insurance Guaranty Association Act, AS 21.80.100(a) would reduce the 'amount payable' on that claim by any recovery made against a solvent insurer. . . . Since the judgment recovered by Mrs. Jordan is less than her recovery against her own uninsured motor-

ist carrier, the Alaska Insurance Guaranty Association is exonerated from any liability on the claim of Mrs. Jordan."

Jordan's response to this analysis rests on her argument that the Act's provisions do not apply to her claim against King in this case. Jordan states only that "[t]here is no decision in this state which holds that the collateral source rule is inapplicable to an action by a victim against an uninsured tortfeasor."

■ The language of the Act supports the Association's interpretation of the "nonduplication of recovery" provision. In *Lucas v. Illinois Guaranty Association*, 52 Ill. App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469 (1977), the Illinois appellate court interpreted a "nonduplication of recovery" provision in the Illinois act, phrased in language only slightly different than that in Alaska's act.[18]

The *Lucas* court was interpreting the Illinois provision in a factual context where:

> (i) a person recovers a judgment against an insured motorist in excess of the limits of the insured's policy, (ii) the insured motorist holds a policy issued by a carrier which becomes insolvent, and (iii) the injured person recovers part of his loss under the uninsured motorist provision of his own policy.[19]

The only effective difference in the present case is that the King policy's liability limit is sufficient to cover Jordan's judgment.

---

*See Also Treffenger v. Arizona Ins. Guar. Ass'n*, 22 Ariz.App. 153, 524 P.2d 1326, 1327 (1974):

> [The Guaranty Association] is liable, if at all, only to the extent that the insolvent insurer would have been under its policy. Thus, the liability of [the insolvent insurer], if any, determines the outcome of the case against [the Guaranty Association].

**17.** Jordan has also relied on *Nianick v. Edgewater Beach Hotel*, 28 Ill.App.3d 33, 328 N.E.2d 82 (1975). That case dealt with a statute with two separate procedures for processing existing claims against an insolvent insurer. The court held that the claims had not been determined according to the chosen procedure and were thus "not eligible for payment . . . at this time." *Id.* at 84. The case is in no way

helpful to a determination of the Association's obligations to King here.

**18.** The Illinois statute's provision was quoted by the court as follows:

> (a) Any claimant having a claim against his company under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. *Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under the claimant's insurance policy.*

10 Ill.Dec. at 83, 367 N.E.2d at 471, citing Ill. Rev.Stat. 1975, ch. 73, ¶ 1065.9(a) (emphasis added by the court).

**19.** 10 Ill.Dec. at 81, 367 N.E.2d at 469.

Lucas contended, as Jordan has here, that the recovery under his uninsured motorist policy was a wholly independent collateral source which should not diminish the amount of damages otherwise recoverable from the Fund.[20] The *Lucas* court rejected this contention as untenable in light of the explicit statutory language and the public policy underlying the Act:

The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent. . . . To permit a greater recovery than would have occurred had the insurance company remained solvent would both extend the Act beyond its purpose and offend public policy by giving the Act an interpretation which results in a windfall judgment.[21]

The *Lucas* court's reasoning is persuasive. The collateral source rule has been adopted as the lesser of two evils: allowing a victim double recovery rather than allowing the tortfeasor, the benefit of the victim's insurance premiums, charity or another source independent of the tortfeasor.[22] In the case at bar these equities are not present, since Jordan's claim would not be recovered from King, but from the publicly created Association Fund, standing in his insurer's stead. Furthermore, the $12,500 which she recovered from her insurance company as a result of Medallion's insolvency exceeds the damages awarded as compensation by the superior court. Facts such as these underly the statutory language and purpose prohibiting double recovery from the Fund.[23] We therefore conclude that the "nonduplication of recovery" provision of AS 21.80.100 embodies a legislative abrogation of the collateral source rule as it might otherwise apply to Jordan's recovery from her own insurer.

In light of the foregoing, we hold that the superior court erred in holding that the award entered in Jordan's favor should not be offset by the $12,500 which Jordan had recovered under the uninsured motorist provision of her insurance policy.[24] We further hold that the superior court correctly determined that AS 21.80.100 (the "nonduplication of recovery" provision of the Act) relieved the Alaska Insurance Guaranty Association of any obligation to pay the judgment Jordan had obtained against King.

The matter is remanded for entry of an amended judgment consistent with this opinion.

Reversed and Remanded as to No. 3400.

Affirmed as to Nos. 3401 and 3673.

**20.** *Id.* 10 Ill.Dec. at 82, 367 N.E.2d at 470.

**21.** *Id.* 10 Ill.Dec. at 83, 367 N.E.2d at 471. In reaching this conclusion, the court distinguished a case which held that a plaintiff who had purchased three separate uninsured motorists policies from the same insurer was entitled to recover under each policy because he had paid separate premiums under each policy. *See Glidden v. Farmers Auto. Ins. Ass'n*, 57 Ill.2d 330, 312 N.E.2d 247 (1974). The court also gave instructions as to computing the offset in recovery from the fund where the judgment was greater than the insolvent insurer's (or here, the Fund's) coverage, a question not presented here.

**22.** *See* Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Calif.L.Rev. 1478 (1966).

**23.** *See* Note, *Unreason in the Law of Damages: The Collateral Source Rule*, 77 Harv.L.Rev. 741, 753 (1964).

**24.** Jordan has cross-appealed alleging that the superior court erred in the following respects: in denying her motion for new trial; in supplementing the trial record; in certain of its findings of fact; and in its refusal to grant a new trial on the basis that she was the beneficiary of ineffective assistance of counsel. We have reviewed each of these specifications of error and are not persuaded that any of the questioned rulings and determinations of the superior court were in error.