Joseph Rudolph **WONDRA, Appellant,**

v.

**AMERICAN FAMILY INSURANCE GROUP, The Minnesota Insurance Guaranty Association, Respondents.**

No. CX–88–928.

Court of Appeals of Minnesota.

Dec. 6, 1988.

Review Denied Jan. 25, 1989.

Theodore R. Melby, Timothy L. Warnemunde, Montgomery, for Joseph Rudolph Wondra.

Kenneth R. White, Farrish, Johnson & Maschka, Mankato, for American Family Insurance Group.

Dale M. Wagner, Louis J. Speltz, Moss & Barnett, Minneapolis, for The Minnesota Ins. Guar. Ass'n.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, Minneapolis, amicus curiae, for Minnesota Trial Lawyers Ass'n.

Heard, considered and decided by NORTON, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Joseph Wondra appeals from a declaratory judgment in which the trial court interpreted provisions of the Minnesota Insurance Guaranty Association Act (Minn.Stat. §§ 60C.01–.20 (1982)) and found that Wondra must first pursue and exhaust his own uninsured motorist coverage before pursuing claims against the Minnesota Insurance Guaranty Association (MIGA), that any uninsured benefits must be offset against MIGA's obligation, and that Wondra cannot pursue underinsurance claims. Won-

dra also appeals from the trial court's denial of an award of attorney's fees. We reverse, and remand on the issue of attorney's fees.

## FACTS

On May 29, 1984, Joseph Wondra and Alvin Williams were in an automobile accident. Williams' vehicle was covered by liability insurance issued by Iowa National Mutual Insurance Company in the amount of $100,000. On the date of the accident, Wondra had an insurance policy issued by respondent American Family Insurance Group; this policy provided separate underinsured motorist and uninsured motorist coverages, each in the amount of $50,000. Iowa National became an insolvent insurer within the meaning of the Minnesota Insurance Guaranty Association Act (the Act) approximately two years after the accident. The legislature created the Act in 1971 to provide a fund to be used when insurers become insolvent and are unable to pay their obligations under insurance contracts.

Wondra brought an action in district court seeking a judicial determination of the priority of insurance coverages between American Family and MIGA. Both American Family and MIGA in their answers claimed the other was the primary insurer.

## ISSUES

1. Under the Act, is the insured permitted to pursue either underinsured or uninsured motorist coverage, and must any recovery be deducted from MIGA's obligation?

2. Was the insured entitled to an award of attorney's fees?

## DISCUSSION

There are no disputed issues of fact in this matter. This court need not give deference to a trial court's decision on a legal issue. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission,* 358 N.W.2d 639, 642 (Minn.1984).

### I

■ The actual amount of damages Wondra has suffered has not yet been determined. We rule only on the threshold questions of whether Wondra can pursue either underinsured or uninsured motorist benefits and whether these must be deducted from any potential obligation of MIGA. Wondra has paid premiums for separate underinsured and uninsured motorist coverages.

The trial court has the duty of attempting to interpret and apply Minn.Stat. § 60C.13 (1982) of the Act in accordance with its purpose. The purpose, as stated in section 60C.02, is

> to avoid excessive delay in payment and *to avoid financial loss to claimants* or policyholders because of the liquidation of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of the protection among insurers.

Minn.Stat. § 60C.02, subd. 2 (1982) (emphasis added). Minn.Stat. § 60C.02, subd. 3 (1982), provides that the Act is to be liberally construed to effect the stated purposes.

Minn.Stat. § 60C.05, subd. 1 (1982), deals with the duties of the association and provides:

> The association shall:
>
> (a) *Be deemed the insurer to the extent of its obligation* on the covered claims. The claims found by the board of directors to be covered shall be paid out of available funds after they have been approved or settled under sections 60B.45, subdivision 2, and 60B.58, subdivision 2, or the corresponding laws of another jurisdiction, subject to the board's power to reduce the amount of or reject the award under section 60C.10.

(Emphasis added).

Section 60C.13 deals with nonduplication of recovery and contains exhaustion requirements:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insurer in liquidation which is also a covered claim, is required to exhaust first

his right under the other policy. Any amount payable on a covered claim under Laws 1971, Chapter 145 shall be reduced by the amount of any recovery under such insurance policy.

Minn.Stat. § 60C.13, subd. 1 (1982).

The trial court applied these apparently conflicting provisions and reached a result requiring Wondra to seek recovery first under his uninsured motorist coverage. By the trial court's interpretation, uninsurance benefits received by Wondra would be deducted from MIGA's obligation. The trial court also concluded that Wondra could not pursue his underinsurance benefits because of his uninsurance claim. To reach this result, the trial court looked to the terms of Wondra's insurance policy with American Family. The policy specifically defined "uninsured" to include situations where the tortfeasor's insurer becomes insolvent, and defined "underinsured" to exclude such situations.

Minn.Stat. § 645.16 (1986) provides that the object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature; every law shall be construed, if possible, to give effect to *all* of its provisions. The Minnesota Supreme Court has stated that the objectively reasonable expectations of policy holders regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions might have negated those expectations. *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 277 (Minn.1985) (citing Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 967 (1970)).

The trial court's order did not harmonize these statutory provisions. Through its interpretation, the trial court disregarded the purpose of the Act and deprived Wondra of insurance coverage for which he had paid and which he had a right to receive. *See Safeco Insurance Companies v. Diaz*, 385 N.W.2d 845, 849 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 30, 1986) (this court stated the long-held rule in insurance law that an insured is entitled to coverage for which he has paid a premium).

Wondra asserts, and we shall assume for purposes of this analysis, that his damages resulting from the accident exceeded $100,000 and amount to approximately $150,000. He had an insurance policy with American Family under which he paid premiums for both uninsurance and underinsurance coverages, each of which provides a maximum coverage of $50,000. The tortfeasor had liability coverage with its insolvent insurer in the amount of $100,000, a liability maximum which MIGA would then assume. Under the trial court's interpretation of the American Family policy and application of the nonduplication provision of section 60C.13, Wondra would collect his $50,000 in uninsurance coverage and this would be deducted from MIGA's potential $100,000 liability obligation. As one cannot collect underinsurance benefits once uninsurance benefits have been received, *see Murphy v. Milbank Mutual Insurance Co.*, 388 N.W.2d 732, 737 (Minn.1986), Wondra can collect only a total of $100,000, even though, absent insolvency of the tortfeasor's insurer, he has an available insurance pool of $150,000 which would cover all of his damages (the tortfeasor's $100,000 liability insurance and his $50,000 in underinsurance coverage).[1] This conclusion of

---

1. We note that this calculation uses the "add-on" method of determining underinsured motorist benefits as discussed in *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244 (Minn.1980). This method was replaced by the legislature in 1985 when it enacted Minn.Stat. § 65B.49, subd. 4a, and adopted a "difference of limits" or "offset" method of calculating underinsurance benefits, which was recently affirmed and discussed by the Minnesota Supreme Court in *Broton v. Western National Mutual Insurance Co.*, 428 N.W.2d 85, 88 (Minn.1988).

Section 65B.49, subd. 4a, became effective October 1, 1985, and applies to all motor vehicle insurance policies that are "executed, issued, issued for delivery, delivered, continued, or renewed in this state after September 30, 1985." 1985 Minn.Laws, 1st Spec.Sess., ch. 10, § 121. Wondra's accident occurred on May 29, 1984, and his insurance policy in effect at that time was effective from January 25, 1984, to July 25, 1984. Although the parties did not address this issue and submitted their briefs before *Broton* was filed, we believe the *Holman* "add-on" method was in effect at the time of the accident and during the term of Wondra's policy. *See Amco Insurance Co. v. Lang*, 420 N.W.2d 895,

the trial court cannot be harmonized with the purpose of the Act and the duties of the association. It imposes a severe financial loss on the claimant and relieves the association of its duty to assume the obligations of the insolvent liability carrier to the extent of the carrier's obligation on covered claims.

Wondra asserted that he had both uninsurance *and* underinsurance coverage and that he should be allowed to choose the coverage under which to pursue recovery. The trial court disagreed and found that he must seek recovery under his uninsurance coverage because his policy defined uninsurance coverage to include insolvency of the tortfeasor's insurer. However, in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), the Minnesota Supreme Court held that the insured has the right of full control over his lawsuit against the tortfeasor. *Id.* at 261. The supreme court has also held that both uninsurance and underinsurance coverage may be applicable and that the insured can recover under either, but not both, coverage. *Murphy v. Milbank*, 388 N.W.2d at 737.

■ We conclude that Wondra has two claims—one for underinsurance and one for uninsurance coverage. Based on the above-cited cases, he has a choice of which he will pursue. Because the tortfeasor's now-insolvent insurer provided $100,000 in liability coverage, if it is subsequently determined that Wondra's damages exceed $100,000, Wondra should be able to pursue the underinsurance coverage up to $50,000, with a total potential recovery of $150,000. Wondra's underinsurance recovery is not deductible from MIGA's obligation, because it is in excess of the tortfeasor's coverage and is not, therefore, a "covered claim" under section 60C.13.

MIGA is concerned that the claimant and his insurer might find it in their best interests to collude in arriving at a total damage figure if Wondra is given the option of choosing to pursue either uninsurance or underinsurance benefits. Regardless of

whether Wondra reaches a settlement, goes to arbitration, or receives a trial court judgment for his damages, MIGA can protect against such danger. If Wondra reaches an out-of-court settlement on his damages, section 60C.10 provides that the association board shall determine whether claims submitted for payment are covered, and the board can make a finding that a claim is not covered by the Act and it may reduce or even deny the claim. If Wondra goes to arbitration, we see no reason why MIGA should not be able to intervene in the proceeding to confirm the arbitrator's award. Finally, if Wondra goes to court to determine his damages, MIGA would defend in the tortfeasor's name.

■ Wondra's policy with American Family does define uninsurance coverage to include insolvency of the tortfeasor's insurer and specifically defines underinsurance coverage to exclude such situations. These policy definitions were crucial to the trial court's interpretation of the Act. It must be borne in mind that an insurance contract is a contract of adhesion. The parties to the contract have unequal bargaining power and the insurance contract is offered on a "take it or leave it" basis. *Atwater Creamery*, 366 N.W.2d at 277. Consequently, restrictive language is to be construed against the insurance company which drafted the policy and in favor of the insured. *Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977). Likewise, exclusions in insurance contracts are read narrowly against the insurer. *Atwater Creamery*, 366 N.W.2d at 276.

■ American Family's definition of underinsurance coverage, which excludes insolvency of the tortfeasor's insurer, is impermissibly narrow when compared with the statutory definition of underinsurance coverage. Minnesota case law suggests that the 1980 repeal of Minn.Stat. § 65B.49, subd. 6(e) (1978), which contained the statutory definition of underinsured coverage, repealed the requirement that in-

898 (Minn.1988) (an insurance policy is customarily governed by the law in effect at the time the policy is issued or the contract made).

surers offer this coverage, but not necessarily the definition of underinsurance coverage. Thus, the 1978 statutory definition appears still to have been in effect at the time of this accident in 1984. *See Sobania v. Integrity Mutual Insurance Co.*, 371 N.W.2d 197, 199–200 (Minn.1985); *Hoeschen v. South Carolina Insurance Co.*, 378 N.W.2d 796, 800 (Minn.1985). The 1978 definition of underinsured motorist coverage read:

> [T]he reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle.

Minn.Stat. § 65B.49, subd. 6(e) (1978).

American Family's policy definition has impermissibly limited Wondra's underinsurance coverage to exclude situations where the tortfeasor's insurer becomes insolvent. Wondra's claim falls within the statutory definition of underinsurance coverage, because Minn.Stat. § 60C.05, subd. 1 (1982), deems MIGA the insurer to the extent of Iowa National's obligation on Wondra's claim against the tortfeasor's residual bodily injury liability coverage.

Various other interpretations of these statutes and policy provisions were proposed by the parties to this lawsuit as well as the amicus Minnesota Trial Lawyers Association. However, given the guidance of Minnesota case law in *Schmidt v. Clothier* and *Murphy v. Milbank*, we conclude that Wondra must be able to control his lawsuit. This means he can choose to pursue either uninsurance or underinsurance benefits, for which he has paid premiums, and the nonduplication and exhaustion requirements of section 60C.13 apply only to uninsurance claims. This statutory interpretation harmonizes the purposes of the Act as stated in section 60C.02, subds. 2 and 3, the duties of the association as stated in section 60C.05, and the nonduplication and exhaustion provisions of section 60C.13.

## II

■ Wondra argues that the trial court erred in refusing to award him attorney fees. The Declaratory Judgment Act contains a provision for supplemental relief; it provides that further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. Minn.Stat. § 555.08 (1986). In *Kline v. Hanover Insurance Co.*, 368 N.W.2d 381 (Minn.Ct.App.1985), this court addressed the issue of awarding attorney's fees in declaratory judgment determinations in insurance cases. This court held that attorney fees are properly awarded because an insurance contract is intended to relieve the insured of the financial burden of litigation and because the declaratory judgment costs are considered consequential damages. *Id.* at 383.

The trial court explained its denial of plaintiff's attorney fees by observing that "there has been no showing of bad faith," apparently referring to the limited authority provided by Minn.Stat. § 549.21, subd. 2 (1986). We hold that the trial court erred in overlooking its authority under the Declaratory Judgment Act, as interpreted in *Kline*, and we remand for the trial court to determine the amount of attorney fees Wondra should receive.

We observe that Wondra paid premiums for his insurance coverage; MIGA and American Family disagreed on their respective obligations. Although his own interest was also involved, to the extent that a dispute between two insurance entities is involved, it would be highly inequitable to force Wondra to bear the burden of resolving it.

In *Folk v. Home Mutual Insurance Co.*, 368 N.W.2d 305 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 20, 1985), this court affirmed the trial court's award of attorney fees incurred in both trial court and appellate court in a case involving an insurance dispute and a declaratory judgment action. This court viewed the cost of bringing the appeal as part of the total cost of bringing the declaratory judgment action. *Id.* at 308. Pursuant to *Folk* and in the interest of judicial economy, we remand to the trial court to make findings and an

award of attorney fees for Wondra's action at both the trial and appellate court levels.

## DECISION

Reversed, and remanded on the issue of attorney's fees.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent from the majority opinion insofar as it concludes the Minnesota Insurance Guaranty Association is liable for payment of the insolvent insurer's obligations on the covered claims without an offset, and that Wondra may assert a claim for underinsured motorist benefits against American Family.

As the majority points out, uninsured and underinsured insurance coverage may apply simultaneously to a single accident and an insured may elect to pursue a claim under either coverage. *See Murphy v. Milbank Mutual Insurance Co.,* 388 N.W.2d 732, 737 (Minn.1986). The majority concludes Wondra has both underinsured coverage and uninsured coverage under his policy with American Family and that he may assert a claim for underinsured benefits from American Family after asserting a liability coverage claim against the Minnesota Insurance Guaranty Association. I disagree.

The American Family policy issued to Wondra affords Wondra underinsured motorist coverage, but expressly excludes underinsured motorist coverage of vehicles insured by an insurance company at the time of the accident but which "becomes insolvent." Williams was insured by Iowa National Mutual Insurance Company at the time of the accident; the company became an insolvent insurer two years after the accident. Consequently, Wondra's claims for underinsured motorist benefits are not covered under the underinsured motorist provisions of his American Family policy. However, Wondra does have a valid claim for coverage under the uninsured motorist provisions of his policy because the American Family policy defines an uninsured motor vehicle as a vehicle insured by an insurance company "at the time of the accident but * * * the company * * * becomes in-

solvent." Since Williams' insurer became insolvent, Wondra may assert only a claim for uninsured motorist coverage against American Family.

According to the language of the Minnesota Insurance Guaranty Association Act, Wondra must assert that claim against American Family before he can claim benefits under the act.

> Any person having a claim against an insured *under any provision in an insurance policy* other than a policy of an insurer in liquidation which is also a covered claim, *is required to exhaust first any rights under the other policy.*

Minn.Stat. § 60C.13, subd. 1 (1986) (emphasis added).

The majority concludes American Family's definition of underinsured coverage is impermissibly narrow or void because it excludes underinsured coverage when an insurance company becomes insolvent. I do not believe American Family's definition of underinsurance coverage is impermissibly narrow because, as a practical matter, Wondra is afforded up to $50,000 in coverage under either provision and therefore is not deprived of any coverage. If Williams' insurance company were solvent and paid the limits of its coverage Wondra could have asserted a claim for $50,000 under the underinsured provisions of his American Family policy. Conversely, if Williams' insurance company were insolvent and paid no benefits Wondra still could assert a claim for $50,000 under the uninsured coverage provisions of his American Family policy. Wondra's total recovery may differ, but his recovery from American Family is $50,000 in either case. His claim for underinsured coverage benefits, otherwise recoverable under the underinsured motorist provisions of his policy, merely is converted to a claim for uninsured benefits by operation of his insurance policy. *Cf. Gudvangen v. Austin Mutual Insurance Co.,* 284 N.W.2d 813, 815 (Minn.1979) (the automobile insurer was in receivership; the automobile was uninsured for the purposes of the no-fault insurance act because no plan of reparation security was in effect).

The majority states Wondra had a $150,-000 insurance pool available to him at the time of the accident and concludes that total pool still should be available under the Minnesota Insurance Guaranty Act. I disagree. The Minnesota Insurance Guaranty Association is deemed the insurer to the extent of the insolvent insurer's obligations on the covered claims. *See* Minn.Stat. § 60C.05, subd. 1(a) (1986). The insurance guaranty act was intended to relieve policyholders and claimants from financial losses caused by insurers' insolvencies. *See id.* § 60C.02, subd. 2. However, the offset provisions of the act indicate the act is intended as a supplemental source for reparation security and that the association is not necessarily intended to become a primary insurer. *See id.* § 60C.13, subd. 1 (any amount payable on a covered claim "shall be reduced" by the amount of any recovery under an insurance policy other than the policy of the insolvent insurer). Accordingly, I would affirm the district court which concluded Wondra first must assert a claim for uninsured motorist benefits against American Family and that any amounts subsequently received from the Minnesota Insurance Guaranty Association must be reduced by that amount.

NORTON, Judge (concurring specially).

I concur in the result reached by the majority opinion. However, I would reach that result for other reasons.

I agree with the dissent that the uninsured proceeds of the American Family policy should be applied first pursuant to that policy prior to the MIGA funds. But, I disagree with the dissent that these proceeds should then be deducted from MIGA funds.

If it were not for the fortuity of Iowa Mutual's insolvency subsequent to the accident causing Wondra's injury, Wondra would have had a $150,000 insurance pool from which to seek recovery. It is contrary to the policy of this state to construe the MIGA act so that claimants lose coverage. I would not deduct the uninsurance proceeds because of the strong policy statement in § 60C.02:

Subd. 2. **Purposes.** The purposes of Laws 1971, chapter 145 are to provide a mechanism for the payment of covered claims under certain insurance policies and surety bonds, to avoid excessive delay in payment and *to avoid financial loss to claimants or policyholders* because of the liquidation of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of the protection among insurers.

Subd. 3. **Construction.** Laws 1971, *chapter 145 shall be liberally construed to effect the purposes stated in subdivision 2.*

Minn.Stat. § 60C.02 (1982) (emphasis added).

This strong statement of policy requires section 60C.02 to be read as superior to the deduction statute, § 60C.13 (1982). A literal construction is not to be adopted contrary to the general policy and object of the statute. *Knopp v. Gutterman,* 258 Minn. 33, 102 N.W.2d 689 (1960). Thus there can be no deduction where the effect is to reduce the insurance pool for which the injured party could have availed himself absent the insolvency of the tort-feasor's insurance company. Section 60C.13 must be read to provide for no deduction where the previously mentioned MIGA policy is frustrated. I believe this to be the legislative intent from the language of 60C.02.

I find nothing in the MIGA Act which states or implies that the legislature was concerned with protecting MIGA funds from depletion in a situation such as this case. The amount paid by insurance companies to the fund is merely a cost of doing business that affects the cost of insurance coverage.

MIGA is derived from a uniform act adopted in many states. While it is true that there are states adopting the dissent's reasoning, these cases are distinguishable where the injured party would be in a better position than if the insurance company had been solvent, *see Vokey v. Massachusetts Insurers Insolvency Fund,* 381 Mass. 386, 409 N.E.2d 783 (1980) (only allowed to collect $10,000 under policy if

insurer had been solvent and therefore could not collect greater amount from fund); or the injured party would have received a double recovery, *see King v. Jordan,* 601 P.2d 273 (Alaska 1979) (insured received $12,500 from uninsured coverage and therefore could not receive any amount from fund when judgment was less than amount previously received); or the state did not allow add-on recovery of benefits as Minnesota did at the time of this accident. *See Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359 (1978) (no collection from the fund where uninsured coverage is identical to the policy limits of the insolvent insurer). This being a matter of first impression, I would opt for construing the statute against deduction of the uninsured proceeds, because there will be no actual duplication of recovery in this case.

Finally, I believe that MIGA steps into the shoes of Iowa Mutual as it is deemed the insurer by Iowa Mutual's obligations by 60C.05 (1982). That obligation is for the policy limits, without deduction, in accordance with 60C.02 and 60C.05.

For example, if Wondra were found to have sustained damages in the amount of $70,000, $50,000 (the amount Wondra is entitled to recover from his uninsured coverage) must be deducted and MIGA would be liable for the remaining $20,000. If damages were found to be $150,000, Wondra would be entitled to $50,000 from uninsured proceeds and $100,000 from the fund as the tort-feasor's policy provided. There is nothing in the statute which would lead me to believe that the legislature intended the injured party to receive less than his full recovery, be it $20,000, $70,000 or $150,000. I believe the statute merely requires that an injured party's uninsured limits be exhausted, before MIGA funds are paid, and MIGA funds are then required to pay the excess damages over the uninsured policy limits. This method will prevent duplication of recovery, and I believe, is the procedure intended by the legislature.