**Nancy Jo GIMMESTAD, Respondent,**

v.

**Luella Jean GIMMESTAD, et al.,
Dorothy P. Loeffler,
Respondents,**

**Gary L. Wright, et al., Appellants,**

**Chrysler Corporation, Respondent.**

**No. C9–89–1840.**

Court of Appeals of Minnesota.

Feb. 27, 1990.

Michael R. Docherty, David G. Martin, Doherty, Rumble & Butler, St. Paul, for Nancy Jo Gimmestad.

John F. Angell, Stich, Angell, Kreidler & Muth, Minneapolis, for Luella Jean Gimmestad, et al.

Lee L. LaBore, Hopkins, for Dorothy P. Loeffler.

Mark Bloomquist, Raymond L. Tahnk–Johnson, James M. Riley, Meagher & Geer, Minneapolis, for Gary L. Wright, et al.

Gary J. Gordon, Fetterly & Gordon, Minneapolis, for Chrysler Corp.

Considered and decided by PARKER, P.J., and LANSING and NORTON, JJ.

## OPINION

LANSING, Judge.

Appellants Gary L. Wright and the State of Minnesota challenge the trial court's determination that respondent Nancy Gimmestad is entitled to full coverage to the extent of the policy limits available from the Minnesota Insurance Guaranty Association (MIGA). MIGA has taken the place of appellants' insolvent insurer. Concluding there is "no just reason for delay," the court entered an amended judgment and this appeal followed.

## FACTS

We adopt, with minor variation, the trial court's well-stated account of the facts. Nancy Gimmestad's claims arise from an automobile accident which occurred in Minnesota in 1983. Gimmestad was a passenger in a Dodge Omni driven by her mother and suffered severe injuries resulting in quadriplegia.

The accident was allegedly caused by a "white out" created by a snowplow owned by the State. The Dodge Omni entered the "white out" and collided head-on with a car approaching from the opposite direction.

Gimmestad brought this action against the State, the owner of the snowplow; Wright, the driver of the snowplow; Luella Gimmestad, her mother and the driver of the Dodge Omni; Melvin W. Gimmestad, the owner of the Dodge Omni; Dorothy Loeffler, the other driver; and the Chrysler Corporation, the maker of the Dodge Omni.

At the time of the accident, the State was insured by the Transit Insurance Company. Transit's policy limit was $100,000 per person. After this accident, Transit became insolvent within the meaning of the Minnesota Insurance Guaranty Association Act (Act), Minn.Stat. § 60C.01–.20 (1982). Gimmestad's claims against the State and Wright are therefore being handled by the Minnesota Insurance Guaranty Association (MIGA).

According to Minn.Stat. § 60C.09, subd. 2 (1982), MIGA will provide coverage up to the applicable policy limits of the insolvent insurer or $300,000, whichever is less, subject to a $100 deductible. In the present case, Transit's coverage limit for the snowplow was $100,000, making MIGA's maximum possible exposure $99,900.

Gimmestad was a resident of Texas at the time of the accident. Her automobile, which remained in Texas and was not involved in the accident, was insured by a policy executed in Texas by Government Employees Insurance Company (GEICO). This policy had $25,000 coverage limits for combined uninsured/underinsured motorist (UM/UIM) coverage, and $2,500 in personal injury protection (PIP) coverage. Gimmestad was also entitled to recover no-fault basic economic loss benefits under her parents' policy, which covered the Dodge Omni involved in the accident.

Gimmestad recovered from GEICO the full $2,500 in PIP benefits available under her own policy and all of the $27,500 in basic economic loss benefits under her parents' policy ($10,000 in wage loss benefits and $20,000 in medical benefits, minus the $2,500 received from GEICO). GEICO has also paid the full $25,000 in UIM benefits available under Gimmestad's policy.

Gimmestad moved for a declaration that MIGA could not offset the PIP benefits she has received or the UIM coverage available under her own policy. MIGA opposed the motion by arguing entitlement to a reduction of its obligations by the amount of any UIM or PIP benefits available to Gimmestad. MIGA further argued choice of law considerations mandate application of Texas insurance law, which allows a reduction in available UIM coverage. The trial court granted Gimmestad's motion.

### ISSUES

1. Did the trial court err in determining MIGA could not offset its obligations by the amount of PIP benefits paid to Gimmestad?

2. Did the trial court err in determining that Minnesota rather than Texas law applied to this case?

### ANALYSIS

#### I

 The Act contains the following exhaustion and offset requirements:

**60C.13 NON–DUPLICATION OF RE-COVERY.**

Subdivision 1. Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insurer in liquidation which is also a covered claim, is required to exhaust first his right under the other policy. *Any amount payable on a covered claim under [this Act] shall be reduced by the amount of any recovery under such insurance policy.*

Minn.Stat. § 60C.13 (1982) (emphasis added).

MIGA argues it is entitled to an offset of the $30,000 total PIP benefits which Gim-

mestad received from GEICO. Offset is governed by the second sentence of section 60C.13, which is underscored. The phrase "any recovery under such insurance policy" in turn refers back to the recovery on claims identified in the first sentence (the exhaustion requirement) of section 60C.13 and is dependent on the first sentence for its meaning.

The language of the first sentence of section 60C.13 is cumbersome and the interrelationship of the clauses and phrases is confusing. This ambiguity of syntax and antecedent has lead to differing interpretations of nearly identical language. For instance, one jurisdiction requires exhaustion and/or offset when a claim fits the statutory definition of a "covered claim." *Henninger v. Riley,* 317 Pa.Super. 570, 464 A.2d 469 (1983); *Bullock v. Pariser,* 311 Pa.Super. 487, 457 A.2d 1287 (1983); *Sands v. Pennsylvania Insurance Guaranty Association,* 283 Pa.Super. 217, 423 A.2d 1224 (1980). Another jurisdiction has interpreted a similar provision as requiring offset only when double recovery would otherwise result. *Senac v. Sandefer,* 418 So.2d 543 (La.1982). Although these interpretations may, in most cases, lead to similar results, they illustrate the ambiguity of the provision.

If a statute is ambiguous and two or more interpretations are possible, a court's role is to determine probable legislative intent and give the statute a construction consistent with that intent. *Beck v. City of St. Paul,* 304 Minn. 438, 445, 231 N.W.2d 919, 923 (1975) (citing Minn.Stat. § 645.16). Legislative intent may be ascertained from legislative history and from examination of other statutory provisions in a chapter.

 Although a caption is not part of a statute, it may be relevant to legislative history if present in the bill during the legislative process. *Minnesota Express, Inc. v. Travelers Insurance Co.,* 333 N.W.2d 871, 873 (Minn.1983) (citing *In re Contest of General Election on Nov. 8, 1977,* 264 N.W.2d 401, 404 n. 5 (Minn. 1978)). The caption of section 60C.13 reads: **"NON–DUPLICATION OF RE-**

COVERY." This caption was present in the bill during the legislative process. *See* Senate File No. 246, *enacted by* 1971 Minn. Laws ch. 145, § 13.

The presence of the caption in the statute's legislative history suggests that offset is required only to prevent a claimant from receiving a windfall or double recovery. Under this interpretation, the second sentence of section 60C.13 requires an offset of "any [duplicative] recovery."

Reading "duplicative" into the offset requirement of section 60C.13 brings it into accord with other provisions of the Act. The Act is to be liberally construed to effect its stated purposes, one of which is "to avoid financial loss to claimants * * * because of the liquidation of an insurer[.]" Minn.Stat. § 60C.02, subds. 2 and 3 (1982). In addition, under the statute MIGA is "deemed the insurer to the extent of its obligation on the covered claims." Minn. Stat. § 60C.05, subd. 1 (1982). Interpreting section 60C.13 as requiring an offset to prevent double recovery effectively harmonizes these statutory provisions.

This interpretation of section 60C.13 is consistent with *Wondra v. American Family Insurance Group*, 432 N.W.2d 455, 459 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). In *Wondra*, this court concluded when both UIM and UM coverage is available, a claimant has a choice of which to pursue. If UIM coverage is sought, any recovery "is not deductible from MIGA's obligation, because it is in excess of the tortfeasor's coverage and is not, therefore, a 'covered claim' under section 60C.13." *Id.* This court further concluded "the nonduplication and exhaustion requirements of section 60C.13 apply only to uninsurance claims." *Id.* at 460.

Although *Wondra* dealt only with recovery of UM and UIM benefits, both parties argue it supports their respective positions in this appeal. In support of its position, MIGA cites the following sentence from *Wondra:*

> Wondra's underinsurance recovery is not deductible from MIGA's obligation, because it is in *excess* of the tortfeasor's

coverage and is not, therefore, a "covered claim" under section 60C.13. *Id.* at 459 (emphasis added). MIGA reasons if UIM benefits are *excess* coverage, it necessarily follows any claim for *primary* benefits is a "covered claim." Under such an analysis, MIGA urges recovery of PIP benefits, which are primary, must be considered a "covered claim." MIGA notes PIP benefits are similar to UM benefits in that they are not meant to supplement the liability insurance of the tortfeasor.

However, *Wondra* need not be read to imply that any claim for *primary* benefits must be offset. A more reasonable interpretation of *Wondra* and of section 60C.13 is that MIGA will be entitled to an offset of payments made from another insurance policy only when double recovery would otherwise result. Payment of the "excess" PIP benefits in this case does not produce such a duplicative recovery. Thus, interpreting section 60C.13 as not requiring an offset of PIP benefits is consistent with this court's opinion in *Wondra*.

Because of the legislative history and in order to harmonize the provisions of the Act, we interpret the language of section 60C.13 to prevent a windfall or double recovery. A claimant should not receive greater recovery than if the insolvent insurer had remained solvent. Because Gimmestad is in no better position than she would have been had Transit remained solvent, MIGA is not entitled to an offset of the PIP benefits she has received.

## II

■ The choice of law issue in this case is between the "add on" method of calculating UIM coverage, which was in effect in Minnesota at the time of Gimmestad's accident in 1983, or Texas' "difference in limits" method. Under Texas law and the "difference in limits" method, recovery of UIM benefits would require an offset under section 60C.13. Under the "add-on" method, MIGA would not be entitled to an offset of the recovered UIM benefits. *See Wondra*, 432 N.W.2d at 458 n. 1.

■ In deciding choice of law issues, five factors are examined: (1) predictability of

results, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973). In cases such as this involving tort and contract, all five factors are important. *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 833 (Minn.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

Predictability of results is served by application of Minnesota law in this case. Automobile insurance policy writers accept the risk that their insureds may be involved in accidents in other states and that the law of other states may be applied to their policies. *See Hague v. Allstate Insurance Co.*, 289 N.W.2d 43, 50 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). GEICO has never questioned the applicability of Minnesota law to its determination of the amount of UIM benefits available.

Maintenance of interstate order involves consideration of sufficiency of contacts between the forum state and the transaction. *Hime*, 284 N.W.2d at 833. The following contacts justify application of Minnesota law to this case: the accident occurred in Minnesota; the drivers of the vehicles were Minnesota residents; Gimmestad, a former Minnesota resident, was hospitalized and treated in Minnesota after the accident; and the suit was brought in Minnesota courts. *See Id.* at 832, 833 (where virtually identical contacts supported application of Minnesota law).

Simplification of the court's judicial task generally "poses no problem since the courts are fully capable of administering the law of another forum if called upon to do so." *Milkovich*, 295 Minn. at 161, 203 N.W.2d at 412 (citing *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966)). Nevertheless, this factor is obviously advanced when a Minnesota court applies Minnesota law.

In considering the advancement of governmental interests factor, the concern is that "Minnesota courts not be called upon to determine issues under rules, which, however accepted they may be in other states, are inconsistent with our own concept of fairness and equity." *Hime*, 284 N.W.2d at 833. Minnesota is interested in seeing that "tort victims are fully compensated." *Bigelow v. Halloran*, 313 N.W.2d 10, 12 (Minn.1981). This interest and the policies underlying the Act, including avoidance of financial loss, will be best served by application of Minnesota law to this case. Further, Gimmestad has incurred medical costs in Minnesota. There is a governmental interest she "not be denied recovery on the basis of doctrines foreign to Minnesota." *Milkovich*, 295 Minn. at 170–71, 203 N.W.2d at 417.

Minnesota provides the better rule of law in this case. The "add-on" method of determining UIM benefits, which was in effect at the time of this accident in 1983, was replaced by the legislature when it adopted a "difference of limits" method in 1985. *See Broton v. Western National Mutual Insurance Co.*, 428 N.W.2d 85, 88 (Minn.1988). In 1989, however, the legislature eliminated the "difference of limits" method and reinstated the "add-on" method for calculating UIM benefits. *See* 1989 Minn. Laws ch. 213, § 2; 1989 Minn. Laws ch. 356, § 20. This action supports the conclusion that the "add-on" method is the better rule of law.

## DECISION

Affirmed.